OPINION
{¶ 1} In this case, Arnold Scott (Arnold) appeals a trial court decision overruling his motion to modify or terminate a spousal support obligation. Arnold presents the following assignments of error:
{¶ 2} I. The magistrate and trial court erred in failing to modify or terminate the spousal support obligation of Appellant, based on his advancing age and changing economic circumstances.
{¶ 3} II. The magistrate and trial court erred in excluding from admission into evidence Appellant's testimony regarding his medical condition, as Appellant's medical condition is statutorily relevant to his ability to pay spousal support.
{¶ 4} After reviewing the record and applicable law, we find the assignments of error without merit. Consequently, the trial court judgment will be affirmed.
 I
{¶ 5} The record in this case indicates that Arnold and Carole Scott (Carole) were divorced in 1992, after 37 years of marriage. In the divorce decree, Carole was awarded spousal support of $750 per month for life, subject to her death, remarriage, or cohabitation with a member of the opposite sex, or Arnold's death. At the time, Carole was 56 years of age and had not worked outside the home for most of the marriage. However, she was working part-time as an assistant manager of a furniture store, and earned about $140 per week. Arnold was also employed, earning $60,000 per year at Tremac Corp., and over $16,000 yearly as an independent sales representative. Under the terms of the decree, Carole was additionally awarded real estate valued at $62,000. The property had an outstanding mortgage of $28,000, which Carole was ordered to pay.
{¶ 6} After paying spousal support for several years, Arnold filed a motion in May, 2001, to terminate support. Subsequently, Carole filed a motion for contempt, based on an alleged support arrearage. This was followed by Arnold's own motion for contempt, in connection with a debt owed to Carole's mother. All these matters were heard by a magistrate, who overruled Arnold's motion to terminate support and motion for contempt. Regarding Carole's motion, the magistrate found that a spousal support arrearage of $2,768 existed. However, the magistrate did not find Arnold in contempt, because the arrearage was the result of a job change and was not willful. The magistrate did recommended that Arnold make an additional payment of no more than $10 per month on the arrearage.
{¶ 7} Arnold timely objected to the magistrate's decision, but raised only the issue of the spousal support obligation. Specifically, Arnold claimed that failure to terminate or modify support was an abuse of discretion. After considering the matter, the trial court overruled the objection and adopted the magistrate's decision.
{¶ 8} As we mentioned, Arnold claims in his first assignment of error that the trial court erred by failing to terminate or modify support. We review spousal support orders for abuse of discretion, meaning that before we can reverse, we must find that the trial court's decision is "unreasonable, arbitrary or unconscionable." Graham v.Graham (1994), 98 Ohio App.3d 396, 399 (citation omitted). After reviewing the evidence, we find no abuse of discretion.
{¶ 9} As we also said earlier, Arnold was earning about $76,000 per year in 1992, when spousal support was ordered. At the modification hearing, Arnold testified that in 1997, he began to learn the mortgage origination business. This was apparently a change of careers. Subsequently, Arnold was employed by several banks, the last of which was Fifth Third Bank. However, he was terminated by Fifth Third in March, 2001. Arnold believed his age may have been the reason, and indicated that he questioned if loan origination was a viable job option, given his age (65).
{¶ 10} At the time of the hearing, Arnold was employed five and a half hours per day, for a guaranteed twenty-seven hours a week, at Airborne Express. His pay rate was about $10.35 per hour. Arnold also received about $1,317 per month in social security benefits. The most recent tax return given to the court (1999) indicated that Arnold and his wife had $128,189 in total income, which included a deduction of $60,175 for farm income loss. After a further deduction for alimony paid, the gross income of Arnold and his wife was $119,524. Arnold submitted some W-2 statements for the year 2000 to the court, but not a tax return. He claimed he did not recall the amount of his income in 2000. He also said (at the November, 2001 hearing) that he had just filed his 2000 tax return and did not have a copy of it.
{¶ 11} The affidavit of income and expenses that Arnold filed stated that he had approximately $2205 in income and $3127 in expenses per month (not including his spousal support obligation). Because Arnold included expenses of his second wife, the magistrate considered the wife's income in deciding the claim of changed circumstances. This approach was appropriate. See Roach v. Roach (1989), 61 Ohio App.3d 315,320 (indicating that when courts evaluate a change in circumstances, they should consider the current spouse's income if the obligor includes expenses both spouses incur).
{¶ 12} Arnold contended in the trial court, and also claims on appeal, that his circumstances have changed because he is of retirement age. Concerning this point, the magistrate commented that "[w]hile the Defendant's decision to retire is reasonable, there seems to be no financial consequences as a result of his decision. He continues to live a comfortable lifestyle and even stated in court that he did not need to work because of his current wife's income." Accordingly, the magistrate found no facts to support a change of circumstances.
{¶ 13} The record supports the magistrate's assessment. As an aside, we also note that Arnold's income was understated on the affidavit of income and expenses. His claimed income from Airborne Express was $10,660 per year. However, since Arnold was guaranteed 27 hours per week, his yearly income would have been about $14,531. As we previously mentioned, Arnold had social security income of $1,317 per month, or about $15,804 per year. This means that Arnold had an income from employment and social security of about $30,335 per year, without even taking his wife's income into consideration. Under the circumstances, and given Arnold's failure to be completely forthcoming about his family's current income, we think the trial court acted correctly in finding no change in circumstances.
{¶ 14} As an additional matter, Arnold claims the magistrate improperly ignored the fact that $70,000 of the 1999 income was a one-time pension distribution that is not recurring income. However, no evidence to that effect was submitted. Line 16b of the 1999 tax return does show a taxable amount for "pensions and annuities" of $70,331, but no other information, including tax schedules or testimony, was provided concerning the origin or terms of this amount. Consequently, Arnold gave the trial court no basis for ignoring the $70,331 in income. Furthermore, even if the amount was a one-time distribution, R.C. 3105.18
does not contain any prohibition against considering non-recurring income. To the contrary, this is a term used in connection with "gross income" for child support purposes. Compare R.C. 3119.01(C)(7).
{¶ 15} Even if non-recurring income were relevant, the wages of Arnold and his wife for 1999 were still over $94,000. Specifically, line 7 of their 1999 income tax return lists $94,864 in income from wages, salaries and tips. This is a substantial amount of income under any view, even if the pension income is excluded. Moreover, Arnold did not give the magistrate any breakdown of the relative contributions he and his wife made to income for 1999 or any other year. Accordingly, the magistrate did not err in failing to consider the alleged amount of non-recurring income.
{¶ 16} In deciding that termination of spousal support was not warranted, the magistrate also focused on the fact that Carole's situation had changed very little since the original award. Although Carole currently received about $504 in social security benefits, the magistrate found that terminating the spousal support award would place her perilously close to poverty level income. Further, her income was about the same as at the time of the divorce, and she was still paying the mortgage payment on the house. The magistrate's focus on these points was appropriate, since we have stressed previously that "a spousal support award must balance the obligee's need for support against the obligor's ability to pay." Billingham v. Billingham (Feb. 16, 2001), Montgomery App. No. 18403, 2001 WL 127764, *3.
{¶ 17} Based on the evidence presented, the trial court did not abuse its discretion by failing to modify or terminate the spousal support obligation. Consequently, the first assignment of error is overruled.
 II
{¶ 18} In the second assignment of error, Arnold claims that the trial court erred by refusing to admit testimony about a medical condition that was statutorily relevant to his ability to pay spousal support. The particular testimony involved symptoms related to Arnold's heart condition and the effect of stressful employment situations on his blood pressure.
{¶ 19} Arnold is correct in observing that when trial courts award spousal support, they must consider several factors, including the "ages, and the physical, mental, and emotional conditions of the parties." R.C.3105.18(C)(1)(c). Nonetheless, after reviewing the record, we find no harmful error in the admission of evidence.
{¶ 20} As a preliminary point, we note that Arnold's heart by-pass surgery predated the 1992 divorce. Specifically, in November, 1992, Arnold filed a motion for reconsideration, asking the court to reconsider the spousal support award. Among the issues mentioned was Carole's excellent health versus Arnold's status as a person who had previously undergone open-heart surgery. The court did not choose to reconsider the spousal support award on this basis, but did add a provision ending spousal support if Carole cohabited with a male who was not a relative. Thus, the heart surgery took place at least ten years ago and was addressed in a prior court decision. Despite these facts, Arnold refers to himself in his brief as a "recovering heart patient." This does not add to the credibility of his argument.
{¶ 21} More important, Arnold did not say at the modification hearing that he quit the loan origination business because of his health. In fact, he felt he was terminated because of his age. Arnold also did not give his health as a reason for failing to return to this business. Instead, Arnold said he questioned whether that occupation was viable because he was not as desirable in any industry at age 65 as he was at age 55.
{¶ 22} Following this testimony, Arnold began to discuss his 1991 bypass surgery. At that point, the other side objected. The magistrate sustained the objection because of the need to deal only with events that occurred after the marriage was terminated. Arnold then testified that he suffered from hypertension and was under a doctor's care. After making these comments, Arnold was asked if full-time employment aggravated his hypertension. When the other side objected to this question, the magistrate indicated that unless medical records said that employment aggravated Arnold's hypertension, the point would have to be made in a different way.
{¶ 23} In an apparent attempt to address the magistrate's concerns, Arnold's counsel marked a letter from a doctor that outlined Arnold's blood pressure before and after a stress test. However, the magistrate found this information of little value because employment situations and physical tests may involve completely different types of stress. The magistrate then sustained an objection to another question about what problems Arnold experienced with his blood pressure when he was working. The basis of the objection was that the question required speculation.
{¶ 24} As proof that the magistrate erred, Arnold relies on Milamv. Milam (Oct. 19, 1994), Greene App. No. 94CA23, 1994 WL 579722. In particular, Arnold cites Milam for the proposition that medical diagnosis and testing or specific medical findings are not necessary to support a finding that a spouse is not able to work. We did make such a comment inMilam. Our point was that a medical diagnosis alone of a particular condition (in that case, Chronic Fatigue Syndrome) is both unnecessary and insufficient to establish that a party cannot work. Specifically, unlike some situations where expert opinion is required to establish proximate cause, the issue in a spousal support case is not whether another's act caused the injury. Instead, the relevant issue is simply whether a party is able to earn income to support himself or herself. 1994 WL 579722, *2.
{¶ 25} Accordingly, in the present case, Arnold could have testified that he was unable to work because of the debilitating effect of blood pressure problems, and the magistrate should have allowed testimony on that point. However, any error was harmless, since the issue was not whether Arnold was able to work, i.e., Arnold did not claim that he could not perform his current job at Airborne Express — nor did he say he was disabled from any type of work. To the contrary, he argued that spousal support should be terminated or modified because his income had declined since the date of the divorce decree. As we said, the magistrate and trial court found no change in circumstances because Arnold was being assisted in living expenses by his current wife and enjoyed a comfortable lifestyle that had not changed since the divorce. We have already said that we agree with that finding. As a result, any error by the magistrate did not affect the outcome of the case.
{¶ 26} We would also point out that in Milam, testimony was offered not just from the allegedly disabled spouse, but also from a vocational expert. In this context, we held that "an award of spousal support based on unemployability does not require an expert medical opinion when unemployability can be proven by the testimony of the spouse and a vocational expert who bases his opinion, in part, upon the spouse's subjective complaints concerning which she testified." 1994 WL 579722, *1. Thus, while a party could certainly testify subjectively about his or her inability to work, some other type of supporting testimony should normally be offered.
{¶ 27} Based on the preceding discussion, the second assignment of error is without merit and is overruled.
{¶ 28} Accordingly, since both assignments of error have been overruled, the judgment of the trial court is affirmed.
WOLFF, P.J., and YOUNG, J., concur.